Chicago Wood Piling Company, Appellee, v. H. T. Anderson et al., Appellants.

Gen. No. 9,735.

Opinion filed February 13, 1942.

CHARLES H. GREEN, of Freeport, for appellants.

ASCHER & ELLIS, of Freeport, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

The Chicago Wood Piling Company brought an action in the circuit court of Stephenson county, against H. T. Anderson, E. M. Rocho and Rocho Construction Company, asking for a lien on funds that was due from the county of Stephenson to Rocho and the Rocho Construction Company, for piling which they had furnished the said defendants in the construction of a road in Stephenson county, Illinois. Attached to the petition was an itemized statement of the material which was alleged to have been furnished by the plaintiff to one H. T. Anderson, a subcontractor of the defendants, Rocho and the Rocho Construction Company.

The bill further alleged that all of the material so furnished was used by the defendants, Rocho and Rocho Construction Company, in the erection of a bridge which formed a part of the State highway in said county. They alleged that there was due and unpaid to the plaintiffs the sum of $538.76.

The defendants filed an answer to the complaint, and admitted that E. M. Rocho and the Rocho Construction Company were engaged in a general contracting business; that they had a contract with Stephenson county to build one bridge; that they were without knowledge as to certain other allegations of the complaint to form the truth of said allegations. The case was tried before the court without a jury, and issues found for the plaintiff. An order was signed on the 2nd day of June, 1941, which found the issues in favor of the plaintiff, and judgment was entered in favor of the plaintiff, and against the defendants in the sum of $538.76 and costs of suit. It is from this judgment that the appeal is prosecuted.

Notice of appeal was filed in the circuit court of Stephenson county on the 20th day of June, 1941. Proof of service of notice of appeal was served upon the plaintiff on the same day. An appeal bond was filed and approved by the circuit court on the 27th day of June, 1941. The precipe for the record, by the defendants, was filed the same day. On the 8th day of August, the trial court extended the time for filing the record in the Appellate Court to the 3rd day of September, 1941. The report of proceedings was filed in the office of the clerk on August 25, 1941. These dates are given because the appellee discovered that there had been a mistake made in the entry of the judgment, and on the 20th day of September, 1941, the appellee made a motion in the circuit court of Stephenson county for leave to amend the record, and for leave to file amendments in the Appellate Court. Notice of this motion was given to Charles H. Green, the attor-

ney for the appellants. On the same day the record shows that all parties to the litigation were represented by their attorneys, and the court granted the motion to amend the record, and to file amendments in the Appellate Court. Thereupon, the same day the judgment record was amended and filed *nunc pro tunc* as of June 2, 1941, and was ordered to be incorporated in the amended record, and filed in the Appellate Court. So far as the record discloses, the (defendants) appellants did not object to this proceeding.

It is now contended by the appellants in this court, that the original judgment was a nullity, and that the trial court was without authority to amend the judgment of June 2, 1941. In the case of *Knefel v. People,* 187 Ill. 212, the law is well stated relative to the court's authority to amend a judgment, where they use this language: ''The power of courts, whether of law or equity, to make entries of judgment or decrees *nunc pro tunc* in proper cases and in furtherance of the interests of justice, is one which has been recognized and exercised from ancient times and as a part of their common law jurisdiction. This power, therefore, does not depend upon statute—it is inherent. It rests partly upon the right and duty of the courts to do entire justice to every suitor, and partly upon their control over their own records and authority to make them speak the truth. 1 Black on Judgments, sec. 126.

''The law is well settled that a court is powerless to amend its final judgment and thereby correct judicial errors after the term at which it was rendered. It may, however, thereafter, upon notice to parties in interest, by order entered *nunc pro tunc,* amend or correct such judgment, when, by reason of a clerical misprision, it does not speak the truth. Freeman on Judgments, chap. 4; *Church v. English,* 81 Ill. 442; *Becker v. Sauter,* 89 id. 596; *Tucker v. Hamilton,* 108 id. 464.''

In the case of *Quigley v. Quigley,* 268 Ill. App. 130, the Appellate Court of the Third District cited with approval, *Knefel v. People, supra,* and held that under certain circumstances a judgment could be amended after the term of court has expired, upon notice to the parties in interest, by order entered *nunc pro tunc,* amend or correct such judgment, when, by reason of a clerical misprision, it does not speak the truth. *Tucker v. Hamilton,* 108 Ill. 464; *Ives v. Hulce,* 17 Ill. App. 30; *Becker v. Sauter,* 89 Ill. 596; *Church v. English,* 81 Ill. 442.

In the present case the usual procedure was followed, by giving notice to the opposing party that they intended to ask the court to correct the judgment order, *nunc pro tunc,* to comply with the actual facts, as presented by the record in the case. There were abundant facts contained in the record itself, on which to base the amendment, which the court ordered to be filed *nunc pro tunc,* as the date of the original judgment. It is our conclusion the court did not err in following this motion to correct the judgment order.

It is next insisted by the appellants that the court did not have jurisdiction of all the parties to the suit, as notice of the application for mechanics' lien was not served on the proper parties, and therefore the judgment is a nullity. In the present case, the evidence clearly shows that the notice was served on Mr. O. G. Hively, the county superintendent of roads of Stephenson county. The record further shows that, before any money could be paid out on this contract to Rocho, or the Rocho Construction Company, Mr. O. G. Hively must order the same paid and O.K. the checks. Mr. Hively testified that he, as superintendent of the highway, supervised the payments of money for all jobs, such as the present one. On Page 155 of the record, we find this question. "Do you know, Mr. Hively, whether at the present time there is money in excess

of $538.76 in the hands of the County of Stephenson, which is due Rocho, subject to the order of court, being compensation for that bridge work and bridge job?'' A. ''Yes.'' By Mr. Green, the attorney for appellants: ''That is a question for the records, not the best evidence.'' Whether the court treated this as an objection, or just a mere statement of the attorney, the record does not disclose, as there is no ruling of the court upon it. Q. ''Have you paid out to Mr. Rocho all of his money on that bridge job?'' A. ''No, sir.'' Therefore, it stands as undisputed testimony that at the time of the hearing there was money in the hands of the treasurer, that was due Rocho in excess of $538.76. The evidence also shows, without contradiction of any kind, that the appellee furnished all the material to H. T. Anderson, the sub-contractor of Rocho and the Rocho Construction Company, and that all of this piling was used in the construction of the bridge in question, and that the Chicago Wood Piling Company has not been paid in full for the piling. There is really no dispute, as to any facts in the case. The fact that Rocho and the Rocho Construction Company had paid Anderson in full for the piling, has no bearing on the merits of this controversy.

The appellants contend that the suit was not properly started, because the lien was never perfected. They gave, as their reasons that the notice of claim for lien, filed by plaintiff, is fatally defective. The notice of lien and copy of complaint was served upon O. G. Hively, the county superintendent of highways of Stephenson county, Illinois. It is contended by the appellants that this was not a proper service, and was not in compliance with the statute. It appears from the appellants' argument, that they think that the proper officer on whom notice should have been served, was the county treasurer of said county, as he is the man who has actual custody of the money, and pays it

out. The evidence in this case shows that no money could be paid upon this bridge contract, unless the vouchers therefor, were approved by Mr. Hively, the county superintendent of highways. The purpose of the statutory notice is given the person who has charge of the fund, in mechanics' lien cases, so that such person can protect himself from having to pay twice for the same work. We think that the notice served on Mr. Hively was sufficient, as he has charge of and control of the fund in question.

It is contended by the appellee that where a notice is served in a mechanics' lien case, the question whether it was a proper notice, or whether it was properly served on the right officials, can be raised only by the party upon whom the notice is required to be served. In the case of *First National Bank of Chicago v. City of Elgin,* 136 Ill. App. 453, 468, this court had occasion to discuss the law relative to mechanics' lien notices, and on page 468, we find the following language: ''The provision of section 23 of the lien law requiring subcontractors to notify the city officials of their claims before the money due the contractor is paid to him, or the bonds or warrants are delivered to him, is enacted for the benefit of the city, and to prevent any effort to impose a further liability on the city after it has paid its money or delivered up its bonds or warrants therefor. But the city does not complain here of any lack of notice. The contractors owe these subcontractors. The work and materials for which the subcontractors sought liens were upon the foundation of the improvement, and that foundation was laid according to the contract and was not defective. Why should the original contractors be heard to question the notice given by the subcontractors? The provisions of section 23 of the lien law were not inserted for the benefit or protection of the original contractors. We question whether they could be heard to make this defense against the subcontractors. Ap-

pellant stands in the shoes of the original contractors and has no greater rights than they. For these various reasons we conclude that the decision of the court below properly directed the payment of the subcontractors out of the fund remaining unexpended in the hands of the city.''

In the case of *Backs v. Nelson Const. Co.*, 271 Ill. App. 137, the Appellate Court of the Third District said: ''Equity will not suffer a wrong to be without a remedy, and it is held that the question whether notice served in a mechanics' lien case is a proper notice or whether it was properly served on the proper officials can only be raised by the party upon whom the notice must be served.'' *Spalding Lumber Co. v. Brown*, 171 Ill. 487. To the same effect is *McMillan v. Joseph P. Casey Co.*, 231 Ill. App. 422. This case was carried to the Supreme Court, and is found in 311 Ill. 584. The Supreme Court did not pass upon the question of whether the notice of lien was proper, but did affirm the judgment of the Appellate Court.

Our attention has been called by appellants to the case of *Pirola v. W. J. Turnes Co.*, 238 Ill. 210. The Supreme Court there stated that the bill in question averred that the petitioner had given notice of his lien, as required by law, and that the answer of the defendants denied that there was any notice given. There was no proof of any notice having been given, and the lien claimant, having failed to make proof of notice, could not maintain his suit. Our attention has not been called to any case, where it is claimed the notice was defective that any one except the party upon whom the notice should have been served, can raise the question.

It is our conclusion that the notice was served upon the proper party, and even if it had not been, the appellants are not in a position to urge that question as a ground for reversal. The judgment of the trial court is hereby affirmed.

*Affirmed.*